**CTI–CONTAINER LEASING CORPORATION,
Plaintiff-Appellant,**

v.

**UITERWYK CORPORATION,
Defendant-Appellee.**

No. 81–5758.

United States Court of Appeals,
Eleventh Circuit.

Sept. 13, 1982.

Rehearing and Rehearing En Banc
Denied Oct. 18, 1982.

Ober, Grimes & Shriver, Kieron F. Quinn, James B. Wieland, Baltimore, Md., for plaintiff-appellant.

Richard Candelora, Holland & Knight, Gregg D. Thomas, Tampa, Fla., Alfred E. Yudes, Jr., Philadelphia, Pa., for defendant-appellee.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and HOFFMAN *, District Judge.

WALTER E. HOFFMAN, District Judge:

In October 1980, CTI-Container Leasing Corporation (CTI) brought this action against Uiterwyk Corporation (Uiterwyk) alleging the breach of leases for ocean cargo containers and other related equipment.[1]

---

* Honorable Walter E. Hoffman, U. S. District Judge for the Eastern District of Virginia, sitting by designation.

1. CTI had previously brought the nearly identical cause of action based on the alleged breach of the same leases with slightly different monetary damages requested in the United States District Court for the District of Maryland in February 1980. CTI filed this action in the United States District Court for the Middle District of Florida while the Maryland action was pending.

Uiterwyk filed a third-party complaint against the Government of Iran (Iran) and Iran Express Lines (IEL) in the Maryland action.

Jurisdiction was asserted under diversity and admiralty and CTI designated its claim as a maritime claim within the meaning of Fed.R.Civ.P. 9(h). In February 1981, Uiterwyk moved to implead Iran and IEL as third-party defendants pursuant to Fed.R. Civ.P. 14. In March 1981, the United States Department of Justice filed the first of several Statements of Interest which expressed the United States' position concerning litigation involving American nationals and Iranian entities as a consequence of the Iran-United States Agreement that obtained the release of the American hostages in January 1981. On June 19, 1981, the district court without having ruled on Uiterwyk's impleader motion, stayed this action with the following order:

> In each of these cases[2] the United States has filed a statement of interest, and subsequent to that, a supplemental statement of interest.
>
> The statement, in effect, is a motion for a stay of these proceedings, as a result of the agreement between the United States and the Government of Iran on January 19, 1981. 46 *Fed.Reg.* 7913–32 (January 23, 1981).

The Court is of the opinion that these cases should be, and they are, STAYED, pending determination by the Iran-United States Claims Tribunal of its jurisdiction to hear these claims. *See* Exec. Order No. 12,294, 46 *Fed.Reg.* 14,111 (Feb. 26, 1981).[3]

We now decide CTI's appeal of this stay order.

## I. FACTS

CTI is a Delaware corporation with its principal place of business in New York and is a lessor of ocean carrier cargo containers. Uiterwyk is a Florida corporation and acted as agent for entities whose business included carriage of cargo in international trade.

CTI as lessor and Uiterwyk as lessee entered into a number of leases for ocean cargo containers and other related equipment which are the basis of this action. CTI alleged that Uiterwyk failed to pay its obligations under such leases. Uiterwyk argued that it entered into the leases as agent for IEL,[4] which was an Iranian corporate entity and is now an alleged instrumentality of Iran. Uiterwyk alleged that IEL

---

On January 21, 1982, the district court in Maryland severed and stayed the third-party claims against Iran and IEL. CTI's principal action against Uiterwyk was referred to a magistrate on April 12, 1982 for a hearing, report, and recommendation as to all dispositive pre-trial matters. On May 17, 1982, the magistrate in Maryland stayed the principal action of CTI against Uiterwyk pending our review of the stay issued in the Middle District of Florida.

**2.** In addition to Uiterwyk's impleader motion, it also filed separate actions against Iran and IEL, *Uiterwyk Corp. v. Iran Express Lines*, No. 81–107–Civ–T–K (M.D.Fla., filed Feb. 15, 1981); *Uiterwyk Corp. v. Iran Express Lines*, No. 81–108–Civ–T–K (M.D.Fla., filed Feb. 15, 1981). The June 19, 1981 stay order stayed these actions along with the instant action, and another action against Uiterwyk, *Recovery Services Int'l Inc. v. Uiterwyk*, No. 81–39–Civ–T–K (M.D.Fla., filed Jan. 15, 1981).

Uiterwyk argued that the district court's "consolidated" stay order was, in effect, a Fed. R.Civ.P. 42(a) consolidation. Uiterwyk argued that this consolidation properly placed the third-party defendants before the court. Such a conclusion would bolster Uiterwyk's argument concerning the validity of the stay order. However, we conclude that the district court's

stay order was not a Rule 42(a) consolidation and our review of the stay order is limited to CTI's action against Uiterwyk.

**3.** Exec. Order No. 12,294, 46 Fed.Reg. 14,111 (1981) provides, in pertinent part:

> All claims which may be presented to the Iran-United States Claims Tribunal under the terms of Article II of the Declaration of the Government of the Democratic and Popular Republic of Algeria Concerning the Settlement of Claims by the Government of the United States of America and the Government of the Islamic Republic of Iran, and all claims for equitable or other judicial relief in connection with such claims, are hereby suspended, except as they may be presented to the Tribunal. During the period of this suspension, all such claims shall have no legal effect in any action now pending in any court of the United States....

The authority of the President to suspend claims pursuant to Exec. Order No. 12,294 was upheld in *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981).

**4.** There was no indication in the leases in question that Uiterwyk was acting as agent for Iran, IEL, or any other party.

transported the containers and related equipment to Iran where they remain in custody and control of IEL and Iran.

## II. DISCUSSION

### A. *Appellate jurisdiction*

■ Uiterwyk argued that this court lacks appellate jurisdiction to review the district court's stay order. CTI argued that the stay order is reviewable as a 28 U.S.C. § 1291[5] "final decision" pursuant to *Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976).[6]

In *Hines*, the Fifth Circuit found a stay order appealable because the order operated in practical effect as a "final order" under § 1291. The district court in *Hines sua sponte* stayed plaintiffs' 42 U.S.C. § 1983 employment discrimination action until plaintiffs initiated proceedings before the Equal Employment Opportunity Commission (EEOC) and pursued such proceedings to final administrative action. The Fifth Circuit held such order appealable because its practical effect placed plaintiffs out of court. *See Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2, 82 S.Ct. 1294, 1296 n.2, 8 L.Ed.2d 794 (1962). The court concluded that the district court abused its discretion in staying the action until the conclusion of administrative proceedings and reversed the stay order.

The Fifth Circuit relied on the following factors to treat the stay order as appealable under § 1291. First, the court cited *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152–53, 85 S.Ct. 308, 310–311, 13 L.Ed.2d 199 (1964), for the principles that "the requirement of finality is to be given a practical rather than a technical construction," and when "deciding the question of finality the most important competing considerations are the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on

the other." (citations omitted). The court stated that such a practical construction of the finality doctrine "requires that when a plaintiff's action is effectively dead, the order which killed it must be viewed as final. Effective death should be understood to comprehend any extended state of suspended animation." *Hines, supra*, at 730; *see also McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

Second, the circumstances of the case reinforced the court's conclusion that the stay order was a final order for § 1291 purposes. No EEOC complaint had been filed when the stay order was entered and a minimum delay of eighteen months was needed for final EEOC processing. The effect of such a "protracted and indefinite delay", *id.*, at 732, was to put plaintiffs effectively out of court.

Finally, the district court had not yet addressed the merits of the action when it entered the stay order, and, therefore, "the inconvenience and costs of piecemeal review" were outweighed by "the danger of denying justice by delay." *Id.* The Fifth Circuit decided that these factors favored treating the stay as a final order, and we likewise feel that similar factors exist in the instant case that make this stay order a final order subject to appellate review.

The danger of denying justice by delay for CTI outweighs Uiterwyk's possible inconvenience and costs of piecemeal review. We have no way to estimate the months or even years that may pass before Uiterwyk's claims against Iran and IEL are decided by the Iran-United States Claims Tribunal ("Tribunal"), *see NIC Leasing, Inc. v. Uiterwyk Corp.*, No. 81 Civ. 3866, slip op. at 9 (S.D.N.Y. March 1, 1982), and CTI, an American corporation, should not be denied its day in court against Uiterwyk, another American corporation, because the Tribunal might at some future date assert jurisdic-

---

5. 28 U.S.C. § 1291 provides:
   The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, ex-

cept where a direct review may be had in the Supreme Court.

6. We do not reach CTI's appellate jurisdiction arguments on 28 U.S.C. § 1292(a)(1) and the collateral order doctrine.

tion over Uiterwyk's action against Iran and IEL. Furthermore, Uiterwyk's argument that the delay from the stay order is outweighed by the possibility of inconsistent results from piecemeal review is without merit. CTI did not institute an action against Iran or IEL. Uiterwyk's claims against these two parties are contingent upon a finding in the district court of Uiterwyk's liability to CTI before the Tribunal can accurately enter a judgment in the Uiterwyk and Iran-IEL dispute.

By staying the action pending the Tribunal's determination of its jurisdiction over Uiterwyk's claim for a protracted and indefinite period, the district court placed CTI in an "extended state of suspended animation." *Hines, supra,* at 730. The practical effect of the stay order placed CTI "effectively out of court" and for such reason we hold that the stay order was a "final" order subject to appellate review under § 1291.

### B. *Merits of the stay order*

█ CTI and Uiterwyk disagree as to whether the district court's stay order was a mandatory or discretionary stay. We conclude that the stay order as it affected Uiterwyk's third-party claims against Iran and IEL was mandatory in nature because such claims were suspended by Executive Order No. 12,294 as they are clearly within the Tribunal's jurisdiction. The district court was required to stay those claims, although it nevertheless retained jurisdiction over them. *See Dames & Moore, supra,* 453 U.S. at 684, 101 S.Ct. at 2989. We agree with the district court's stay order as it pertains to the stay of the third party action, but reach a contrary conclusion concerning the stay of the principal action of CTI against Uiterwyk. This portion of the stay order was discretionary in nature as the district court was not required to stay an action between two American corporations.[7]

The inherent discretionary authority of the district court to stay litigation pending the outcome of related proceeding in another forum is not questioned. *See generally Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 665, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978); *Landis v. North American Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *P. P. G. Industries Inc. v. Continental Oil Co.,* 478 F.2d 674 (5th Cir. 1973). Our review of such an exercise of discretion is limited to an abuse of discretion standard. *See McKnight v. Blanchard,* 667 F.2d 477, 479 (5th Cir. 1982).

In *McKnight,* the Fifth Circuit recently vacated a stay order as an abuse of discretion because the stay continued an action for an indefinite period of time. In *McKnight,* the court stated:

The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice. Nevertheless, stay orders will be reversed when they are found to be immoderate of an indefinite duration. In *Landis v. North American Co.,* 299 U.S. 248 [57 S.Ct. 163, 81 L.Ed. 153] (1936), the Supreme Court held that a "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description."

667 F.2d at 479 (citations omitted).

It is difficult to accurately predict the time that CTI will be forced to stand aside if it is required to await the Tribunal's determination of its jurisdiction to hear these claims, but it can safely be described as an indefinite period of time. We cannot uphold such an indefinite or immoderate stay despite Uiterwyk's arguments to the contrary. We, therefore, agree with the procedural posture taken by other courts in

---

**7.** As the United States stated in its Second Supplemental Statement of Interest, which was filed in the Maryland action, only claims of nationals of the United States against Iran and claims of nationals of Iran against the United States are within the Tribunal's jurisdiction. Therefore, we agree with the view of the Unit-

ed States that CTI's claims against Uiterwyk are not within the Tribunal's jurisdiction and not suspended by Executive Order 12,294. In addition, the United States also stated that a stay of this entire action *may* be appropriate; we disagree with this conclusion for the reasons stated herein.

similar litigation arising out of Uiterwyk's involvement with Iran and IEL. *See NIC Leasing, Inc. v. Uiterwyk Corp.*, No. 81 Civ. 3866 (S.D.N.Y. March 1, 1982); *Cotco Leasing Co. v. Uiterwyk Corp.*, No. 80–706 (E.D.Pa. Nov. 9, 1981); *Xtra, Inc. v. Uiterwyk Corp.*, No. 79–1021–Civ.–T–H (M.D. Fla. Aug. 25, 1981). *But see Itel Corp. v. M/S Victoria U*, No. 80–2328 (E.D.La. Sept. 23, 1981), *appeal docketed*, No. 82–3129 (5th Cir. Feb. 24, 1982).[8] These courts that were faced with third party complaints have severed and stayed the third-party actions against Iran and IEL while allowing the principal actions against Uiterwyk to proceed to trial.

Uiterwyk argued that the stay of the entire action should be affirmed because: (1) it will be prejudiced in developing its evidence [9] without the presence of IEL and Iran who are necessary for a comprehensive disposition at one time of the rights of the parties to litigation arising out of the same facts; (2) it will be subjected to significant costs of duplicative proceedings before the district court and the Tribunal; and (3) IEL and Iran are indispensable parties to the litigation.

First, Uiterwyk's argument that it may be prejudiced in developing evidence to support its agency defense without the third-party defendants' presence is not a determinative factor in our decision concerning the stay. An alleged agency agreement between Uiterwyk and IEL is not at issue; it is the contract between CTI and Uiterwyk that is the focus in the principal action. Uiterwyk also will not be hampered by the third-party defendants' absence in attempting to substantiate its impossibility of performance and force majeure defenses. The historical context of the Iran-United States Agreement has not been disputed and CTI has not questioned the factual basis for these affirmative defenses.

Second, Uiterwyk will not be subjected to any undue hardship of duplicative costs by proceeding with the principal action. It will not suffer significant overlapping costs and preparation for proceeding in the Tribunal because we agree with the district court that the third-party claims should be stayed because such claims are within the Tribunal's jurisdiction. Furthermore, any extra costs Uiterwyk might incur do not outweigh the serious harm to CTI if it is compelled to stand aside for an indeterminate period of time to await the Tribunal's decision.

■ Third, Uiterwyk argued that Iran and IEL are indispensable parties under F.R.Civ.P. 19(b) because CTI's claims are inextricably related to Uiterwyk's claims against IEL and Iran. It is not necessary to analyze the factors enumerated in Rule 19(b) [10] to determine if IEL and Iran are

8. A stay was granted in the *Itel* case, but *Itel* is distinguishable because no third-party action was filed in that case. CTI argued that plaintiff's cause of action in *Itel* "was based on leases showing IEL as lessee; Uiterwyk as lessee; IEL c/o Uiterwyk as lessee; and IEL c/o Nippon Umpansha, Ltd. as lessee." Reply Brief for Appellant at 22. Uiterwyk did not dispute this assertion and Uiterwyk's counsel admitted at oral argument that *Itel* was not a similar case, but only cited as an example of possible prejudice that might ensue if the action was not stayed. Indeed, possible prejudice might ensue in an action when named defendants-lessees-agents are not before the court because of Executive Order 12,294. However, this is not the situation in the present action and, therefore, *Itel* is inapposite to these circumstances.

9. Although not emphasized in its brief, Uiterwyk asserted at oral argument, that its status

as agent for IEL provides a meritorious defense to CTI's claims and such status cannot be proved without the presence of IEL and Iran at trial.

10. Fed.R.Civ.P. 19 provides, in pertinent part:
    (a) Persons To Be Joined If Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so

indispensable parties, because "Rule 19(b) deals with the determination a court should make whenever joinder of an interested person is not feasible." *Gertner v. Hospital Affiliates International Inc.*, 602 F.2d 685, 688 (5th Cir. 1979). Hence, the first step in an indispensable party determination requires a decision as to whether joinder of the person in question is feasible. *See Challenge Homes, Inc., v. Greater Naples Care Center, Inc.*, 669 F.2d 667 at 669 (11th Cir. 1982).

■ The district court did not rule on Uiterwyk's motion to join IEL and Iran as third-party defendants and CTI argued that such joinder would deprive the court of jurisdiction under Executive Order 12,294 and violate Rule 19(a). However, we agree with Uiterwyk's argument on this point that "Executive Order 12,294 purports only to 'suspend' the claims, not divest the federal court of 'jurisdiction.'" *Dames & Moore v. Regan, supra*, 453 U.S. at 684, 101 S.Ct. at 2989.

The court in *Challenge Homes, supra*, stated that in making the decision whether the party in question should be joined if feasible under Rule 19(a), "pragmatic concerns, especially the effect on the parties and the litigation, control." *Challenge Homes, supra*, at 669 (citations omitted).

We conclude, viewing the Rule 19(a) factors in light of pragmatic concerns, that joinder of IEL and Iran is feasible and was also the course followed by other courts faced with the same decision. *See NIC Leasing Corp., supra; Cotco Leasing, Inc., supra; Xtra, Inc., supra.*

## III. CONCLUSION

■ We feel that the district court's objectives of adhering to the Iran-United States Agreement, Executive Order 12,294, and the Statements of Interests filed by the United States can best be accomplished by following the paths taken by the courts in the *NIC Leasing, Cotco Leasing*, and *Xtra* cases. In these cases, Uiterwyk's motions for a stay of the entire actions were denied and the third party defendants were joined, but such third-party actions were severed under Rule 42(b), and stayed pursuant to Executive Order No. 12,294. The parties were directed to proceed with their respective principal actions. Therefore, we conclude that district court abused its discretion when it ordered a stay of this entire action. We vacate the district court's stay order and remand the action to the district court for proceedings not inconsistent with this opinion.[11]

### VACATED AND REMANDED.

joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination By Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence

will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

11. We take cognizance of the fact that in the substantially identical action in Maryland, *CTI–Container Leasing Corp. v. Uiterwyk Corp.*, No. JH–80–313 (D.Md., filed Feb. 8, 1980), the district court severed and stayed the third-party action and referred the action to a magistrate. The magistrate subsequently stayed the principal action pending our decision. *See*, note 1, *supra*. We, in effect, approve of the action taken by the district court in Maryland. However, upon remand of this action to the Middle District of Florida, it remains to be decided by the two district courts as to which court will proceed to trial with the principal action. Clearly, the same parties in substantially the exact same litigation should not be permitted to proceed simultaneously in two separate district courts, but we leave the decision of which district court will proceed to trial to the discretion of the district courts involved.