ITEL CORPORATION and Itel Container
International, B.V.,
Plaintiffs-Appellants,

v.

The M/S VICTORIA U (EX PISHTAZ
IRAN), Etc., et al.,
Defendants-Appellees.

No. 82–3129
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 25, 1983.

Rehearing Granted Sept. 16, 1983.

Phelps, Dunbar, Marks, Claverie & Sims, George B. Hall, Jr., New Orleans, La., Dorr, Cooper & Hays, Charles S. Donovan, James D. Boughey, Jeffrey A. Mansfield, San Francisco, Cal., for plaintiffs-appellants.

Don M. Stichter, Tampa, Fla., for Uiterwyk.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district court stayed a suit by a domestic corporation and its foreign subsidiary against another domestic corporation because the defendant corporation had a third-party claim against an Iranian corporation for which it had allegedly acted as agent and the Iranian corporation was deemed to be a necessary party. The stay was imposed to permit the entire matter to be adjudicated before the Iran-United States Claims Tribunal (the Tribunal). We grant leave for an interlocutory appeal and vacate the stay to permit adjudication of the claims that are not asserted against the Iranian corporation.

### I.

Itel Corporation is incorporated under the laws of Delaware. Its subsidiary, Itel Container International, B.V., is a Netherlands corporation. Their interests being identical, we refer to the two corporations simply as Itel. Itel leased several hundred ocean cargo containers between 1976 and 1979, some leases naming as lessee Uiterwyk Corporation (Uiterwyk), a Florida corporation whose principal place of business is Tampa, others naming as lessee Iran Express Lines. Because the case comes to us by interlocutory appeal, there are no findings of fact and many facts crucial to determination of the merits are disputed. It is not yet established whether at the time the leases were made Uiterwyk represented to Itel that Iran Express Lines was a trade name under which Uiterwyk did business, as Itel asserts, or whether Itel then knew that it was a separate entity, an Iranian corporation, as Uiterwyk asserts. Whether the parties intended that leases made with Uiterwyk, as lessee, were intended to obligate it as principal or whether Itel intended to look to Iran Express Lines for payment has not been determined. Although in a memorandum in support of Uiterwyk's motion to file a third-party complaint and cross-claim, Uiterwyk asserts that it was agent for Iran Express Lines as "undisclosed principal," Uiterwyk contends in the pretrial order and now contends that it disclosed to Itel that Iran Express Lines was its principal.

One hundred nineteen leases were introduced in evidence: 83 named Uiterwyk as lessee, 27 named Iran Express Lines as lessee and 9 named Allied Transportation & Trading Corporation, described in the leases as agents for Iran Express Lines and Hong Kong Container Line. Until June, 1979, Uiterwyk made all lease payments to Itel. After negotiations in which Itel sought to recover the sums it claimed to be due, the parties reached a payment agreement "with respect to the outstanding sums owed by [Uiterwyk] to Itel, subject however to a reservation of all accrued rights, maritime and civil." Uiterwyk agreed to use its best efforts to redeliver Itel's containers and equipment, to pay the back rental due Itel through September 1979 in monthly installments, and thereafter to pay rent monthly on any unreturned containers. After several payments, Uiterwyk discontinued making payments on equipment remaining in Iran.

Itel then filed this suit against Uiterwyk, Beryl Shipping, Inc., a Uiterwyk affiliate, and Iran Express Lines, contending that the leases have been breached and seeking to recover the unpaid rental for the cargo containers and related equipment, the value of unreturned containers, and the expenses

of repairing containers returned in damaged condition. Itel and Uiterwyk do not dispute that rental has not been paid, but the amount due is contested. Itel is currently in reorganization in the Bankruptcy Court for the Northern District of California under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (Supp. V 1981), and Uiterwyk is in reorganization in the Bankruptcy Court for the Middle District of Florida.

Uiterwyk obtained leave to file a cross-claim against Iran Express Lines and a third-party complaint against "the Government of Iran." Neither a cross-claim nor a third-party complaint appears in the record, although the pretrial order asserts "Uiterwyk ... has filed a third-party complaint against Iran Express Lines and the Government of Iran." The district court has, however, entered a default judgment against Iran Express Lines in favor of Itel. Its pretrial minute entry states that, if, at trial, the court determines that Uiterwyk "was acting as agent for the Government of Iran and/or Iran Express Lines, and in the further event that it is determined that Iran Express Lines was or is an agent of the Government of Iran, then the matter will be stayed so that plaintiffs may pursue any claim they have against the Government of Iran [before the Iran-United States Claims Tribunal (the Tribunal)]." The district court severed and stayed what it called Uiterwyk's third-party action, *i.e.,* Uiterwyk's cross-claim, against Iran Express Lines "so that said claim may be pursued with the [Tribunal]." It did not mention Uiterwyk's third-party complaint against the "Government of Iran."

Thus the case went to trial only on Itel's claims against Uiterwyk. After two days of trial, both parties rested, and Uiterwyk renewed its motion for a stay of the proceedings against it pending submission of the entire matter to the Tribunal. After hearing oral argument, the district court, without making any findings, entered an oral order staying further proceedings pending submission to the Tribunal of Itel's and Uiterwyk's claims against Iran Express Lines. It later certified the order for interlocutory appeal under 28 U.S.C. § 1292(b) (1976) and required Uiterwyk to post security in the amount of 32% of Itel's claim, with interest, plus $25,000 to cover the expense to Itel of proceeding before the Tribunal. We have been advised by the parties that Uiterwyk has filed a claim before the Tribunal against both the Government of Iran and Iran Express Lines and that Itel has filed a claim against the Government of Iran.

## II.

In order to obtain the release of fifty-two United States citizens taken hostage in Iran, the United States reached an agreement with the Government of Iran. Reflected in a document entitled, "Declaration of the Government of the Democratic and Popular Republic of Algeria Concerning the Settlement of Claims by the Government of the United States of America and the Government of the Islamic Republic of Iran" of January 19, 1981 (the Declaration), this agreement committed the United States to transfer Iranian assets that it had seized to an escrow account from which certain assets would be released to Iran once the American hostages had safely departed from Iran. Assets valued at one billion dollars would be retained in a security account to satisfy awards against Iran rendered by the Tribunal, and this account was to be continually replenished. Declaration of the Government of the Democratic and Popular Republic of Algeria of January 19, 1981 para. 7 (the Companion Declaration), 20 International Legal Materials 224, 226 (1981); *Dames & Moore v. Regan,* 453 U.S. 654, 665, 101 S.Ct. 2972, 2979, 69 L.Ed.2d 918, 931 (1981).

The Declaration provides that the Tribunal will "decid[e] claims of nationals of the United States against Iran and claims of nationals of Iran against the United States and any counterclaim which arises out of the same contract, transaction, or occurrence that constitutes the subject matter of

that national's claim...."[1] Declaration art. II, para. 1, 20 International Legal Materials 230, 230–31 (1981). Pursuant to the Declaration, President Carter issued five executive orders directing the transfer of Iranian assets held by United States nationals, both in the United States and beyond its borders, to an escrow account in the name of the Central Bank of Algeria.[2] When he assumed office, President Reagan "ratified" President Carter's Orders in Executive Order No. 12,294, 3 C.F.R. 139 (1982). This Order also provides, "All claims which may be presented to the Iran-United States Claims Tribunal under the terms of Article II of the Declaration ... and all claims for equitable or other judicial relief in connection with such claims, are hereby suspended, except as they may be presented to the Tribunal." In *Dames & Moore,* the Supreme Court upheld the President's authority to suspend such claims pending in the federal courts.

■ Neither Itel nor Uiterwyk appeals the severance of Uiterwyk's cross-claim against Iran Express Lines or the stay of that claim and neither party appeals the stay of all claims against Iran.[3] The issue here is whether Executive Order 12,294 requires that an action involving claims against a non-Iranian corporation be stayed because the outcome of the suit may affect an Iranian corporation. Without deciding this question of law, a district judge cannot decide whether to exercise his discretion to stay an action that involves claims against Iran and other claims, and we cannot adequately review his decision. Therefore, we grant the motion for interlocutory appeal because the decision to issue a stay order "involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b) (1976).

### III.

Federal courts exist to decide controversy. Those who have, in the common parlance, a "federal case" deserve its prompt adjudication.[4] Therefore, it is the duty of a district court not to sidestep or delay decision.

■ Action on a request for a stay, however, is a matter of judgment, and we review the district court's decision only to determine whether there has been an abuse of discretion.[5] We respect the trial court's

1. The Tribunal also has jurisdiction over claims of the United States and Iran against each other arising out of contracts for the sale of goods and services, as well as jurisdiction over disputes as to the interpretation or performance of provisions of the Companion Declaration. Declaration art. II, paras. 2–3, 20 International Legal Materials 230, 231 (1981).

2. Exec. Orders Nos. 12,276–12,280, 3 C.F.R. 104–112 (1982). As the Supreme Court noted in *Dames & Moore,* 453 U.S. at 665–66, 101 S.Ct. at 2979, 69 L.Ed.2d at 931, "[t]hese Orders[, *inter alia,*] revoked all licenses permitting the exercise of 'any right, power, or privilege' with regard to Iranian funds, securities, or deposits; 'nullified' all non-Iranian interests in such assets acquired subsequent to the blocking order of November 14, 1979; and required those banks holding Iranian assets to transfer them 'to the Federal Reserve Bank of New York, to be held or transferred as directed by the Secretary of the Treasury.'" (Citation omitted.)

3. *Compare CTI-Container Leasing Corp. v. Uiterwyk Corp.,* 685 F.2d 1284, 1288 (11th Cir.

1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983) ("[T]he stay order as it affected Uiterwyk's third-party claims against Iran and [Iran Express Lines] was mandatory ... because such claims were suspended by Executive Order No. 12,294 as they are clearly within the Tribunal's jurisdiction.") The nationalization of Iran Express Lines and the Tribunal's jurisdiction over claims against that entity were apparently not at issue in the *CTI-Container* case by the time the appeal was decided.

4. *See* Fed.R.Civ.P. 1. ("[These rules] shall be construed to secure the ... speedy ... determination of every action.")

5. *Ohio Environmental Council v. United States District Court,* 565 F.2d 393, 396 (6th Cir.1977); *PPG Industries v. Continental Oil Co.,* 478 F.2d 674, 682 (5th Cir.1973); *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir.1963). In *Hines v. D'Artois,* 531 F.2d 726, 733 (5th Cir.1976), we characterized our mode of review as determining whether the stay is "immoderate." "[W]hether or not a stay is 'immoderate' is a

inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants," [6] and we give deference to the district court's judgment that the stay will avoid hardship and inequity, but we "cannot abdicate our [role] ... to prevent the ossification of rights which attends inordinate delay." [7] And because what relieves unfairness for one litigant may impose hardship on the other, inevitably both the district and the appellate courts must consider which side will bear the greater and the less remediable burden from delay. A stay pending adjudication in another tribunal should not be granted unless that tribunal has the power to render an effective judgment on issues that are necessary to the disposition of the stayed action.[8]

### IV.

The district court assumed that "the ultimate truth of the relationships and the agreements between the parties may never be demonstrated unless all parties are before the same fact finder," and that, if adjudication of the claims were divided between two forums, the parties might be denied substantial justice should the results be inconsistent. Furthermore, the district court believed that the defenses of force majeure and frustration might depend on evidence from Iranian sources that was unavailable to it, but possibly available to the

Tribunal. Finally, the district court considered Iran Express Lines to be a necessary party which could only be joined with the other parties in proceedings before the Tribunal.

■ However, only claims of nationals of the United States against Iran and claims of nationals of Iran against the United States are within the Tribunal's jurisdiction.[9] Thus the Tribunal has no jurisdiction to hear the claim of Itel, an American corporation, against Uiterwyk, also an American corporation, nor does it have any jurisdiction to hear the claim of Itel Container International, B.V., a Netherlands corporation, against any party. The district court has not found as a fact even that Iran Express Lines is an Iranian corporation or that it has been nationalized by Iran.[10] Therefore, Executive Order 12,294, which applies only to claims which may properly be presented to the Tribunal, does not mandate a stay of the litigation between Itel and Uiterwyk.

The stay might be justified as a proper exercise of the district court's discretion even if it was not required by the executive order. The district court relied in part on its conclusion that Iran Express Lines is a necessary party. "[T]he first step in an indispensable party determination requires a decision as to whether joinder of the

---

function of two variables—the scope of the stay, and the reasons cited for ordering it."

**6.** *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153, 158 (1936).

**7.** *Hines v. D'Artois,* 531 F.2d at 737.

**8.** Compare our suggestions of dismissals for *forum non conveniens* conditioned on the power of an alternative forum to assert jurisdiction and to grant relief. *E.g., Constructora Spilimerg, C.A. v. Mitsubishi Aircraft Co.,* 700 F.2d 225, 226 (5th Cir.1983); *Bailey v. Dolphin Int'l, Inc.,* 697 F.2d 1268, 1279–80 (5th Cir.1983); *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 394–95 (5th Cir.1983); *Zekic v. Reading & Bates Drilling Co.,* 680 F.2d 1107, 1109 (5th Cir.1982).

**9.** Declaration art. II, para. 1, 20 International Legal Materials 230, 230–31 (1981).

**10.** In its oral ruling on the motion for a stay, the district court noted only that, "At the time the Court entered its minute entry it did not have sufficient evidence before it to determine whether or not Iran Express Lines was or is an entity. The trial thus far has resolved that question in the affirmative." At the trial, Uiterwyk introduced the Articles of Association of Iran Express Lines, showing the latter to be a joint-stock company organized under Iranian law. Hendrik Uiterwyk, an officer of Uiterwyk Corporation, testified that he and his brothers own 49% of the stock of Iran Express Lines. He testified that two Iranian brothers, the Paksinas, own the rest and that the corporation has been nationalized. We intimate no opinion concerning whether, if Iran Express Lines has been nationalized, the claims against it that arose before nationalization are subject to the Tribunal's jurisdiction.

person in question is feasible," [11] for Rule 19 of the Federal Rules of Civil Procedure requires joinder only of "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction."

In deciding whether Itel's claims against Uiterwyk may now properly be stayed, we look, at least by analogy, to the factors set forth in Fed.R.Civ.P. 19(b) for deciding when an action should be dismissed because an indispensable party cannot be joined: "first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

A judgment rendered in the absence of Iran Express Lines would not be prejudicial to that corporation, for it would not bind Iran Express Lines, but it might be prejudicial to Uiterwyk if thereafter Uiterwyk sought reimbursement from Iran Express Lines and the Tribunal decided that Iran Express Lines had a defense to Itel's claims that was not presented to, or was incorrectly decided by, the district court. That possibility appears to be a serious one only as to the twenty-eight leases executed in the name of Iran Express Lines. As between Itel and Uiterwyk a judgment in the absence of Iran Express Lines will be final. Moreover, the Tribunal's records indicate that claims filed before it require about one year for decision. Itel has no adequate remedy for the delay it will suffer if the action is stayed until all claims can be adjudicated by the Tribunal. It is in reorganization and mere delay may be calamitous in view of the amount of its claims. Itel should not be denied its day in court against Uiterwyk because either Uiterwyk or Itel has claims against Iran Express Lines or the Government of Iran or because Iranians might have evidence relevant to the issues between them.

The district court is in a position to determine: (1) whether Uiterwyk is liable on the leases naming it as lessee or whether it is not liable because Itel knew that Uiterwyk was merely an agent; (2) whether, under applicable state law, Uiterwyk is itself liable on the leases naming it as lessee even if it disclosed its agency before the leases were signed; (3) whether Itel knew or should have known that Iran Express Lines was a separate entity or whether Uiterwyk caused Itel to believe that this was merely a pseudonym for Uiterwyk and Uiterwyk is now estopped to contend that it is not liable for leases it executed in the name of Iran Express Lines; (4) whether in any event Uiterwyk became liable for all sums due Itel by virtue of the payment agreement and actions it took after the agreement was signed.

For these reasons, the stay of the claim of Itel against Uiterwyk is VACATED. The stay previously entered regarding claims against Iran Express Lines and the Government of Iran has not been appealed and is not affected by our mandate. The case is REMANDED for further proceedings consistent with this opinion.

---

**11.** *CTI-Container Leasing Corp. v. Uiterwyk* *Corp.*, 685 F.2d at 1290 (citation omitted).