TRAVENOL LABORATORIES, INC. vs. ZOTAL, LTD., & others.[1]

Middlesex.   December 5, 1984. — February 20, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Stay of proceedings, Summary judgment. *Uniform Commercial Code,* Conflict of laws, Sale of goods. *Conflict of Laws. Set-Off. Sale,* Contract of sale.

A judge did not abuse his discretion in denying a motion for postponement of the trial of an action for goods sold and delivered pending the trial in the State of Israel of an action commenced by the defendant, arising from the plaintiff's alleged breach of a distributorship agreement. [97]

In the circumstances an action arising out of a contract for the sale of goods "F.O.B. Cambridge, Massachusetts," was to be governed by the law of Massachusetts. [97-100]

CIVIL ACTION commenced in the Superior Court Department on November 21, 1980.

The case was heard by *Joseph S. Mitchell, Jr., J.* on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert S. Kutner* for the defendants.

*Jeffrey B. Storer* for the plaintiff.

HENNESSEY, C.J. This is an action brought by Travenol Laboratories, Inc. (Travenol), to recover $40,873.15 for goods sold and delivered to Zotal, Ltd. (Zotal), a distributor of Travenol products located in Israel. Travenol moved for summary judgment, and Zotal moved to stay all proceedings pending entry of judgment in a related suit which it had brought in Israel. On July 22, 1983, a judge of the Superior Court denied the motion for a stay, and granted Travenol's motion for sum-

[1] M. Zohar & Co. and Moshe J. Zohar.

mary judgment. Zotal appealed, and we ordered the matter to be transferred to this court.

In 1974, Zotal was appointed the exclusive distributor in Israel of certain medical products of Clinical Assays, Inc. Clinical Assays was later acquired by and became a division of Travenol. In November, 1979, Travenol informed Zotal that it was terminating the distributorship arrangement, and that it was appointing an affiliate, Travenol Laboratories (Israel) Ltd. (Travenol Israel), as its new Israeli distributor.

In February, 1980, Travenol Israel, acting on behalf of Travenol, demanded that Zotal pay the balance due on its account, which at the time was $42,449. Zotal replied by sending a letter, subsequently characterized as a notice of set-off, in which it asserted that it had incurred $63,100 in damages because of the termination of its distributorship, and that it had the right to "set off" these damages against the amount owing for goods sold and delivered. In August, 1980, Zotal brought suit in Tel Aviv against Travenol Israel for damages for termination of its distributorship.[2] On November 21, 1980, Travenol brought this action in the Superior Court in Middlesex County against Zotal for goods sold and delivered.[3] Zotal did not set forth a counterclaim in the Massachusetts suit, but instead alleged, in its eighth defense, that it was entitled "to a set-off in an amount which exceeds the amount of the plaintiff's claim."

Zotal appeals the judge's apparent determination that the notice of set-off which it sent to Travenol did not constitute full payment of all amounts owed for goods sold and delivered. The defendants acknowledge that they cannot prevail under Massachusetts law, but claim that the relevant conflicts principles require Israeli law to be applied to this controversy, and that Israeli law would regard the notice as full payment. We disagree, and conclude that there was no error either in the judge's denial of the defendants' motion for a stay, or in the grant of the plaintiff's motion for summary judgment.

---

[2] Travenol was added as a defendant in this action on April 13, 1981.

[3] A credit given to Zotal reduced the amount allegedly owed to $40,873.15.

1. *Defendants' Motion for Stay.*

In their principal brief, the defendants did not address the denial of their motion to stay the proceedings in Massachusetts pending resolution of their claim in Israel. Accordingly, we need not consider the issue. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Commissioner of Revenue* v. *Plymouth Home Nat'l Bank, ante* 66, 67 n.3 (1985). We note, however, that a motion to stay proceedings is ordinarily a matter addressed to the sound discretion of the trial judge. E.g., *Itel Corp.* v. *M/S Victoria U*, 710 F.2d 199, 202-203 (5th Cir. 1983); *Ohio Envtl. Council* v. *United States Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977). See *Landis* v. *North Am. Co.*, 299 U.S. 248, 254-256 (1936). In the circumstances presented here, where the defendants have already admitted liability for goods sold and delivered, we conclude that there was no abuse of discretion.[4]

2. *Plaintiff's Motion for Summary Judgment.*

It is not disputed that, if Massachusetts law applied to this controversy, Zotal's notice of set-off would not constitute payment for goods sold and delivered, and thus Travenol would be entitled to summary judgment. General Laws c. 106 (the Uniform Commercial Code), § 2-717, as appearing in St. 1957, c. 765, § 1, provides that "[t]he buyer on notifying the seller of his intention so to do may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." For a buyer to invoke this section, the damages which the buyer alleges must stem from a breach of the same contract under which the

---

[4] Though the argument is far from clear, Zotal apparently contends that if Travenol prevails in the Massachusetts action, then Zotal's claim in Israel might be barred by the doctrine of res judicata, and that this hardship requires granting the stay. Zotal reasons that its failure to raise a compulsory counterclaim might constitute a waiver, because its claim for wrongful termination could have been, but was not, pleaded as a compulsory counterclaim to Travenol's claim for goods sold and delivered. See Mass. R. Civ. P. 13 (a), as amended, 385 Mass. 1213 (1982). We disagree. A defendant need not state such a claim if "at the time the action was commenced the claim was the subject of another pending action." *Id.* Zotal asserted its claim in Israel before the instant complaint was filed, and thus failure to raise the counterclaim will not prejudice the Israeli action.

seller is attempting to recover his price. *Hellendall Distribs., Inc.* v. *S.B. Thomas, Inc.*, 559 F. Supp. 573, 574-575 (E.D. Pa. 1983). *C.R. Bard, Inc.* v. *Medical Elecs. Corp.*, 529 F. Supp. 1382, 1387 (D. Mass. 1982). *Sunbeam Corp.* v. *Morris Distrib. Co.*, 55 A.D.2d 722, 724 (N.Y. 1976). Moreover, it is well established that the buyer's "obligation to pay for goods tendered and accepted does not arise under the 'same contract' as the alleged breach of an exclusive dealing or distributorship arrangement" by the seller. *Hellendall Distribs. Inc.* v. *S.B. Thomas, Inc., supra. C.R. Bard, Inc.* v. *Medical Elecs. Corp., supra.*

The defendants contend, however, that Israeli law applies to this controversy, and that application of Israeli law would allow the buyer to set off the damages arising out of the breach of a distributorship agreement against the price owing for goods sold and delivered.

We conclude that the relevant conflicts rules require the application of Massachusetts law. Under the choice of law provision of the Uniform Commercial Code, G. L. c. 106, § 1-105 (1), Massachusetts law applies to "transactions bearing an appropriate relation to this state." In *Cohen* v. *McDonnell Douglas Corp.*, 389 Mass. 327, 331 (1983), we recognized that established conflicts principles "are a useful starting point in determining whether the Commonwealth of Massachusetts bears an 'appropriate relation' to a given transaction or occurrence." See *Skinner* v. *Tober Foreign Motors, Inc.*, 345 Mass. 429, 432 (1963). Other courts which have considered the "appropriate relation" test have also been guided by common law conflicts rules. E.g., *Golden Plains Feedlot* v. *Great W. Sugar Co.*, 588 F. Supp. 985, 990-991 (D.S.D. 1984). See also *Collins Radio Co.* v. *Bell*, 623 P.2d 1039, 1045-1047 (Okla. Ct. App. 1980); Siegel, The U.C.C. and Choice of Law: Forum Choice or Forum Law?, 21 Am. U.L. Rev. 494, 496, 508-509 & n.25 (1972); Nordstrom & Ramerman, The Uniform Commercial Code and the Choice of Law, 1969 Duke L.J. 623, 646. Accordingly, we conclude that G. L. c. 106, § 1-105 (1), authorizes this court to apply Massachusetts common law conflicts principles to commercial transactions.

In our recent decision in *Bushkin Assocs.* v. *Raytheon Co.*, 393 Mass. 622, 632-634 (1985), we adopted the general principles advanced in the Restatement (Second) of Conflict of Laws (1971), with respect to the resolution of conflicts problems involving contracts. Section 191 of the Restatement provides that the law to be applied to a contract involving the sale of a chattel is "the local law of the state where under the terms of the contract the seller is to deliver the chattel unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties." See *Collins Radio Co.* v. *Bell, supra* at 1047-1048; *Baffin Land Corp.* v. *Monticello Motor Inn, Inc.*, 70 Wash. 2d 893, 902-903 (1967), citing Restatement (Second) of Conflict of Laws § 346g, at 101-104 (Tent. Draft No. 6, 1960). We believe that this rule is warranted on the grounds that "[d]elivery is the most significant stage of the sales transaction," Restatement (Second) of Conflict of Laws, *supra* at § 191 comment e, and that "[t]he rule also furthers the values of certainty, predictability and uniformity of result." *Id.* This rule is also consistent with our traditional emphasis on place of delivery in cases involving conflicts of law with respect to the sale of goods. See *Skinner* v. *Tober Foreign Motors, Inc., supra* at 432; *Budget Plan, Inc.* v. *Sterling A. Orr, Inc.*, 334 Mass. 599, 600-601 (1956); *Shohfi* v. *Rice*, 241 Mass. 211, 213-214 (1922). Finally, Restatement (Second), *supra* at § 191, provides the flexibility which characterizes the modern approach to conflicts problems. Whenever the place of delivery principle would fail to require application of the law of the jurisdiction with the most significant relationship to the transactions, § 191 requires that we refer to the general "choice influencing considerations," *Bushkin Assocs.* v. *Raytheon Co., supra* at 631, set forth in § 6.[5]

---

[5] These considerations include: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws, *supra* at § 6(2).

"In an f.o.b. contract, the place of delivery ordinarily is that where under the terms of the contract the seller is to deliver the goods to the carrier f.o.b." Restatement (Second) of Conflict of Laws, *supra* at § 191, comment d. See *Golden Plains Feedlot* v. *Great W. Sugar Co.*, *supra* at 991; *Collins Radio Co.* v. *Bell, supra* at 1047-1048. This rule conforms with the principle implicit in G. L. c. 106, §§ 2-319 (*a*) and 2-504, that in the case of an f.o.b. point of shipment contract, delivery occurs at the point where the goods are placed in the hands of the carrier. See *United Cal. Bank* v. *Eastern Mountain Sports, Inc.*, 546 F. Supp. 945, 980 (D. Mass. 1982), aff'd mem., 705 F.2d 439 (1st Cir. 1983), citing J. White & R. Summers, Uniform Commercial Code §§ 3-5 and 3-6 (2d ed. 1980). There is no dispute here that the Travenol products were all sold "F.O.B. Cambridge, Massachusetts." Thus we conclude that the goods at issue were delivered in Massachusetts, and that Massachusetts law should apply to this controversy.

This is not one of those cases discussed in § 191 of the Restatement, where, notwithstanding the place of delivery, some other jurisdiction "has a more significant relationship . . . to the transaction and the parties," based on the criteria set forth in § 6 (2). See note 5, *supra*. We note in particular that the policy of protecting the "justified expectations" of the parties points to the application of Massachusetts law, since presumably both parties must have expected that goods purchased would be properly paid for. See *Bushkin Assocs.* v. *Raytheon Co., supra* at 635. We have also recognized that choice of law decisions might, in close cases, be influenced by the forum's view of which is "the better rule of law." *Id.* at 634 n.7, quoting R.A. Leflar, American Conflicts Law § 96, at 195 (3d ed. 1977). If Israeli law requires the result which the defendants advocate, we have no difficulty concluding that the Massachusetts rule is the better rule. It furthers the values of certainty and predictability, and is thus consistent with the public interest, that a seller be entitled to the price of goods accepted, regardless of the buyer's claim under some remote transaction.

*Judgment affirmed.*