HECTOR REBAQUE, SR., Plaintiff and Counterdefendant-Appellee, v. FORSYTHE RACING, INC., Defendant and Counterplaintiff-Appellant.

First District (1st Division)   No. 84—1381

Opinion filed July 8, 1985.—Rehearing denied August 7, 1985.

Bishop & Crawford, Ltd., of Oak Brook (Donald B. Garvey and Michael E. Kerpan, Jr., of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and Gary W. Leydig, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:
Plaintiff Hector Rebaque, Sr. (Rebaque), filed suit against defend-

ant Forsythe Racing, Inc. (Forsythe Racing), to recover $36,000 the balance due on an automobile he had sold defendant. Defendant, in an attempt to set off the amount it alleged plaintiff owed defendant under a separate contract to provide sponsorship funds in connection with the 1982 Indy Car World Series, filed a counterclaim against plaintiff seeking $175,000. Defendant claimed that its liability for the balance of the contract sale price would be more than offset by the damages it claimed under the separate contract. On cross-motions for summary judgment the trial court entered judgment for plaintiff for the unpaid balance, finding that defendant owned the car. The court also awarded plaintiff prejudgment interest, made its judgment immediately enforceable and denied defendant's subsequent motion to modify the judgment so as not to make its judgment immediately enforceable.

Defendant contends that the trial court improperly found that it could not, as a matter of law, set off against the balance due on the contract of sale any damages it might have sustained because of a breach of the separate contract for sponsorship. It also contends that the trial court improperly allowed prejudgment interest.

The record discloses the following undisputed facts: Forsythe Racing is an Illinois corporation engaged in the business of automobile racing. Gerald R. Forsythe has been its president since 1982. Manuel Medina Ortiz (Medina), Rebaque, Sr., and Hector Rebaque, Jr., all are residents and citizens of Mexico.

In April-May 1982, Forsythe Racing entered into an oral agreement with Medina and the Rebaques under which Rebaque, Jr., was to serve as a race car driver for an Indy-Type race car owned by Forsythe Racing for the 1982 Indy Car World Series. Forsythe Racing agreed to provide the equipment and support staff for the racing team. Forsythe Racing alleged that plaintiff agreed to furnish it in turn with $675,000 in sponsorship funds for the 1982 season. Plaintiff Rebaque, Sr., claims that he was obligated to furnish only $500,000. The amount actually paid to Forsythe Racing by plaintiff was $500,000.

On July 19, 1982, Hector Rebaque, Sr., purchased in Italy a Lamborghini Countach "s", serial No. ZA9C00500CLA12477. The sports car, valued in excess of $70,000, left Italy for the United States on July 27, 1982. Prior to the automobile's arrival in the United States, Rebaque and Gerald Forsythe orally agreed that Forsythe Racing would purchase the automobile from Rebaque for $72,000.

On June 2, 1982, Forsythe Racing paid to Rebaque $36,000 toward the purchase price. Upon the automobile's arrival into the

United States, Forsythe Racing took immediate possession of it. On August 4, 1982, Forsythe Racing issued a check to Rebaque for the balance owing on the sales agreement. However, at the request of Rebaque and as a result of Mexican government restrictions on United States funds, Forsythe Racing stopped payment on the check. After the payment was stopped, Forsythe Racing never paid the balance of $36,000 to Rebaque. Forsythe Racing withheld the balance due as a $36,000 credit against an amount it believed Rebaque owed to Forsythe Racing under the sponsorship agreement. Despite Rebaque's repeated requests, Forsythe Racing subsequently refused either to complete payment or to relinquish the Lamborghini.

On March 26, 1984, plaintiff moved for summary judgment against Forsythe Racing, seeking judgment in the amount of $36,000 together with prejudgment interest, arguing that Forsythe Racing had no right to set off its debt to him against its claim against him because such set-off was prohibited by section 2—717 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 2—717). Forsythe Racing also moved for summary judgment in its favor as to seeking declaratory relief to confirm its ownership of the Lamborghini and as to its right to assert a set-off. Forsythe Racing further argued that any judgment, or at a minimum any enforcement of judgment, should await the trial of its counterclaim seeking $175,000 against Rebaque.

On May 15, 1984, the trial court, after arguments on the cross-motions, entered judgment in favor of plaintiff in the amount of $36,000 plus $2,914 for prejudgment interest from October 1, 1982. The court also found Forsythe Racing to have been the lawful owner of the Lamborghini in question since August 4, 1982, and ordered plaintiff to furnish and execute all documents necessary for registration and domestication of that vehicle by Forsythe Racing. The trial court also found that there was no just cause to delay these provisions of its order. In entering judgment in plaintiff's favor, the court held that the right of set-off embodied in sections 2—608 and 2—614 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—608, 2—614) was subject in this case to the limitation on the right of deduction set forth in section 2—717 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 2—717).

On May 23, 1984, Forsythe Racing moved for modification of the May 15 order by deletion of the finding making that order immediately enforceable and appealable. In support of its motion, Forsythe Racing argued that it would be inequitable to permit Rebaque to immediately collect his judgment against it, while its claim against him remained pending, since Rebaque was a nonresident alien without as-

sets in this country sufficient to satisfy any judgment which may be ultimately entered against him. In its motion, defendant offered to post a letter of credit or set aside sufficient funds under court supervision to ensure payment to plaintiff of any net judgment which might be entered in his favor. The trial court denied this motion to modify on May 24, 1984.

■■ Defendant argues that the trial court improperly refused to allow a set-off from the purchase price based on its claim under the separate sponsorship agreement. We disagree.

Section 2—717 of the Uniform Commercial Code provides (Ill. Rev. Stat. 1983, ch. 26, par. 2—717):

"Sec. 2—717. Deduction of Damages From the Price

The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

The Uniform Commercial Code Comment states:

"Purposes:

1. This section permits the buyer to deduct from the price damages resulting from any breach by the seller and does not limit the relief to cases of breach of warranty as did the prior uniform statutory provision. To bring this provision into application the breach involved must be of the same contract under which the price in question is claimed to have been earned." Ill. Ann. Stat., ch. 26, par. 2—717, Uniform Commercial Code Comment, at 597 (Smith-Hurd 1963).

Although the parties have not cited to us any Illinois cases, and we have not found any in our own research, in which an Illinois reviewing court has considered the problem before us, the courts of other jurisdictions which have adopted the Uniform Commercial Code, have decided the question.

In *Artmark Associates, Inc. v. Allied Tube & Conduit Corp.* (N.D. Ill. 1981), 32 UCC Rep. Ser. 454, the court, in a suit for goods sold and delivered, refused to allow a set-off based on a separate contract. The court, after quoting section 2—717 and the official comment, said at page 456:

"The contract of which defendant-counterplaintiff complains in its counterclaim is separate and distinct from the transactions complained of by plaintiff. And plaintiff admits this separateness. The purpose of section 2—717 is to enable businesspersons to dispute a particular transaction or transactions while carrying on their business otherwise. The position which

plaintiff takes would, in effect, repeal section 2—717."

In *Travenol Laboratories, Inc. v. Zotal, Ltd.* (1985), 394 Mass. 95, 474 N.E.2d 1070, the court held that a claim for damages under a separate contract could not be used as a set-off against the balance due under a contract of sale. The court, after quoting section 2—717, said:

> "For the buyer to invoke this section, the damages which the buyer alleges must stem from a breach of the same contract under which the seller is attempting to recover his price. *Hellendall Distribs., Inc. v. S. B. Thomas, Inc.*, 559 F. Supp. 573, 574-575 (E.D. Pa. 1983). *C. R. Bard, Inc. v. Medical Elecs. Corp.*, 529 F. Supp. 1382, 1387 (D. Mass. 1982). *Sunbeam Corp. v. Morris Distrib. Co.*, 55 A.D.2d 722, 724, 389 N.Y.S.2d 173 (N.Y. App. Div. 1976)." 394 Mass. 95, ____, 474 N.E.2d 1070, 1072-73.

Other courts have reached the same conclusion: *Jurek v. Thompson* (1976), 308 Minn. 191, 241 N.W.2d 788; *Hellendall Distributors, Inc. v. S. B. Thomas, Inc.* (E.D. Pa. 1983), 559 F. Supp. 573; *Columbia Gas Transmission Corp. v. Larry H. Wright, Inc.* (S.D. Ohio 1977), 443 F. Supp. 14; *C. R. Bard, Inc. v. Medical Electronics Corp.* (D. Mass. 1982), 529 F. Supp. 1382; *National Farmers Organization v. Bartlett & Co., Grain* (8th Cir. 1977), 560 F.2d 1350.

In *Northwest Lumber Sales, Inc. v. Continental Forest Products, Inc.* (1972), 261 Or. 480, 495 P.2d 744, the court, after citing section 2—717 with other authorities, held that neither the Uniform Commercial Code nor the general contract law gives either party to a contract the right to refuse performance because the other has breached a separate contract between them.

These cases establish the better rule, a rule which furthers the values of certainty and predictability, and is thus consistent with the public interest, *i.e.,* that a seller be entitled to the price of goods accepted, regardless of the buyer's claim under some remote transaction. *Travenol Laboratories, Inc. v. Zotal, Ltd.* (1985), 394 Mass. 95, ____, 474 N.E.2d 1070, 1074.

In view of these cases, defendant's interpretation of section 2—717 would violate one of the underlying purposes and policies of the Uniform Commercial Code: "(c) to make uniform the law among the various jurisdictions." Ill. Rev. Stat. 1983, ch. 26, par. 1—102(2)(c).

Defendant argues that section 2—717 of the Uniform Commercial Code does not defeat its rights under sections 2—608(a) and 2—614(a) of the Code of Civil Procedure, which provide (Ill. Rev. Stat. 1983, ch. 110, pars. 2—608(a), 2—614(a):

"Sec. 2—608. Counterclaims. (a) Any claim by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross claim or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim."

"Sec. 2—614. Joinder of causes of action and use of counterclaims. (a) Any plaintiff or plaintiffs may join any causes of action, against any defendant or defendants; and the defendant may set up in his or her answer any and all cross claims whatever, whether in the nature of recoupment, setoff or otherwise, which shall be designated counterclaims."

Defendant argues that under these sections it has the right in an action for the sale of goods to seek by counterclaim damages for any cause of action it may have, even though it arises for a separate, unrelated contract. We disagree.

■ Admittedly, these sections give a party a right to file a counterclaim for any claim it may have, but we hold that if, in an action under the Uniform Commercial Code for goods sold and delivered, a set-off is sought, the counterclaim authorized by sections 2—608 and 2—614 of the Code of Civil Procedure is limited to damages arising out of the same contract as the claim for the goods. Any other claim filed as a counterclaim must be decided separately, as was done here. See Ill. Rev. Stat. 1983, ch. 110, par. 2—614(b).

We have been informed that on October 15, 1984, there was a verdict and judgment in favor of Rebaque and against Forsythe Racing on its counterclaim for $175,000, but that the verdict and judgment were later set aside and the counterclaim is to be retried.

■ Defendant also argues that the trial court erred in refusing to stay its judgment for the balance due on the purchase price. We find that no error was committed in this regard. We agree with the court in *Artmark Associates, Inc. v. Allied Tube & Conduit Corp.* (N.D. Ill. 1981), 32 UCC Rep. Ser. 454, which held that to delay entry and enforcement of a judgment for goods sold and delivered until the other party has an opportunity to try its complaint "in effect, would be the *de facto* repeal of section 2—717."

The trial court correctly held that section 2—717 of the Uniform Commercial Code limited defendant's right to assert a counterclaim to damages flowing from the same contract.

■ Defendant further contends that the trial court incorrectly awarded plaintiff prejudgment interest from October 1, 1982, the date

Rebaque requested payment of the $36,000 balance due on the contract of purchase. We disagree.

Section 2 of "An Act in relation to the rate of interest ***" (Ill. Rev. Stat. 1983, ch. 17, par. 6402) provides in part:

"Sec. 2. Creditors shall be allowed to receive at the rate of five (5) per centum per annum *** on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance ***."

The court in *Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 429, 431 N.E.2d 738, stated:

"On the question of interest, the trial judge has discretion, according to the equities of the case, to award or deny interest as an element of recoverable damages, and interest will be allowed where such damages are liquidated or where they can be ascertained by simple and certain computation. (*Weiland Tool & Manufacturing Co. v. Whitney* (1968), 100 Ill. App. 2d 116, 241 N.E.2d 533.)"

In *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 408-09, 359 N.E.2d 797, the court said:

"The court in *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 251, 323 N.E.2d 73, summarized the principles which govern the awarding of interest under Illinois Law:

'For interest to attach, prior to judgment, absent an agreement, the amount must be fixed, or determinable, and due, in the sense that a debtor-creditor relationship has come into being. (*Kansas Quality Construction, Inc. v. Chiasson,* 112 Ill. App. 2d 277, 250 N.E.2d 785.) If the amount is determinable, interest can be awarded on money payable even when the claimed right and the amount due require legal ascertainment (*L. W. Foster Sportswear Co. v. Goldblatt Bros., Inc.* (7th Cir. 1966), 356 F.2d 906, construing Illinois law), *and the fact that the parties could reasonably differ as to their liability is not a consideration so far as the statute is concerned. (Kansas Quality Construction, Inc. v. Chiasson,* supra.)' (Emphasis added.)"

Forsythe Racing has always admitted, and never denied, that the balance due on the contract of purchase was $36,000. It had no legal grounds for its asserted claim that there was an honest dispute as to the net amount it owed for the Lamborghini because, as we have found, any alleged liability of Rebaque under the sponsorship agreement could not be used as a set-off against the balance of the pur-

chase price. The trial court, in its discretion, correctly awarded prejudgment interest from the date Rebaque requested payment.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.