DOROTHY A. WILSON *et al.*, Plaintiffs-Appellants, v. DAVID R. CHERRY, Defendant-Appellee.

Fourth District    No. 4—92—0577

Opinion filed April 22, 1993.

Delmer R. Mitchell (argued) and Gena J. Awerkamp, both of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy, for appellants.

Karen L. Kendall, Brent H. Gwillim, and Brad A. Elward (argued), all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On August 13, 1985, plaintiffs Dorothy A. Wilson, individually and as executor under the wills of each of her deceased parents, Clarence and Louella Adams, and her two sons Clair A. Wilson and Warren H. Wilson brought suit in the circuit court of Scott County against defendant David R. Cherry. Plaintiffs alleged that Cherry, an attorney hired by plaintiffs to represent the executor in the estates of her parents, committed malpractice in failing to make an election pursuant to section 2032A of the Internal Revenue Code of 1954 (Code) (26 U.S.C. §2032A (1976 & Supp. IV 1980)) on either the Federal estate tax or the Illinois inheritance tax returns for those estates. Section 2032A of the Code permits use of a less-than-market-value evaluation for farmland under circumstances existing here.

This appeal comes before us in an unusual posture. The parties apparently entered into an agreement whereby malpractice by Cherry in failing to advise the executor of the section 2032A option was admitted, and Cherry agreed to pay the two estates a total sum of $300,000 as reimbursement for the additional death taxes the two estates were required to pay because of failure to use that option. According to an order of the circuit court, the parties then agreed to reserve the question of whether plaintiffs were entitled to damages for (1) loss of use of the extra tax money required to be paid (prejudgment interest); (2) attorney fees incurred because of Cherry's error; and (3) losses resulting from a forced sale of the real estate in the estates required in order to pay taxes. These issues were to be submitted to the trial court on the basis of affidavits and other matters on file with the circuit court.

We commend the parties for reaching a partial agreement and attempting to simplify the case. However, the informality with which it was done makes our ruling on several of the issues rather difficult. As we will explain, uncertainty exists as to (1) what type of documents could be filed after a hearing on the merits; (2) what should be done if an issue of fact emerged from the record; and (3) the exact nature of the issues which were before the court. The lack of a sufficiently certain record is dispositive on more than one issue.

On July 18, 1990, following a hearing, the court pronounced a ruling denying the estates' claim for prejudgment interest. On June 12, 1992, the court issued an opinion order which (1) allowed defendant's motion to strike certain affidavits submitted by plaintiffs in their posttrial memorandum; (2) denied plaintiffs' claim for damages arising from an allegedly forced sale of real estate; (3) denied plaintiffs'

claims for interest paid on tax liability resulting from the imposition of higher taxes; (4) denied plaintiffs' claim for refund for fees paid to Cherry; and (5) allowed plaintiffs' claim for reimbursement for fees paid to attorneys Robert Stuart and Robert Bellatti and appraiser Thomas DeSollar for work required because of Cherry's malpractice.

Plaintiffs have appealed contending the court erred in denying their various requests for prejudgment interest, damages for forced sale, reimbursement for interest paid on excess tax liability and reimbursement for fees paid to Cherry. Plaintiffs also maintain the court erred in striking their affidavits. We disagree and affirm.

The parties do not dispute that (1) Clarence Adams died on February 1, 1977, survived by his wife, Louella Adams, and plaintiffs; (2) at the time of his death he owned an undivided one-half interest in a 1,193-acre farm, located in Scott County, Illinois, which he had farmed for many years; (3) his daughter, plaintiff Dorothy Wilson, who had worked with her father in the administration of the farms, was named executor in Clarence's will; (4) Wilson hired defendant to represent her as executor of her father's estate; (5) defendant prepared and filed both Federal and State tax returns and Illinois inheritance tax returns with the farm property appraised and valued at fair market value; (6) defendant did not advise plaintiffs to elect a valuation under section 2032A of the Code on either the Federal estate tax return or the Illinois inheritance tax return; (7) the Federal estate tax due was $89,640, and the Illinois inheritance tax due was $77,836.80; and (8) plaintiffs elected to pay the Federal estate tax in installments pursuant to section 6166 of the Code (26 U.S.C. §6166 (1976)). Section 6166 of the Code allows taxpayers to pay the Internal Revenue Service (IRS) interest only for five years and the balance of the tax plus interest at the rate of 4% (see 26 U.S.C. §6601(j) (1976)) over approximately a 10-year term.

The record further indicates that (1) Louella Adams died on January 30, 1981; (2) Dorothy Wilson was named as executor, and she again hired defendant Cherry to represent her; (3) at the time of her death, Louella owned her undivided one-half interest in the 1,193 acres of farmland and other property and the one-half interest which passed to her upon the death of her husband; (4) the farm real estate, which was originally included and taxed in Clarence Adams' estate, was revalued to reflect what Dorothy Wilson believed to be the proper value of the farm real estate although Cherry advised her the value was probably too low to pass inspection by the Federal and State tax examiners; (5) defendant again did not advise plaintiffs to elect a valuation of the land under section 2032A of the Code; and (6)

as with Clarence Adams' estate, Dorothy Wilson elected to pay the tax due in installments pursuant to section 6166 of the Code.

Within six months after the Federal and State estate tax returns had been filed, the IRS audited those returns. As a result, the IRS increased the value of the farm real estate and increased the tax liability by $97,077.04. When the IRS contacted plaintiffs about the audit, defendant suggested plaintiffs hire another attorney to help with the audit. Plaintiffs hired attorney Robert Stuart. In the course of Stuart's work, he determined that defendant should have elected to use the section 2032A special use valuation for the farm real estate. Stuart conferred with attorney Robert Bellatti, who confirmed that defendant should have elected to use section 2032A.

■ The major aspect of plaintiffs' claim for relief over and above the $300,000 agreed upon is their contention that they should have been permitted recovery for their lost profits from the $300,000 from the time they made excessive tax payments in that sum until they obtained judgment in that amount (prejudgment interest). They begin their argument by pointing to broad language from *Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230, 259, 512 N.E.2d 691, 706, and *Zych v. Jones* (1980), 84 Ill. App. 3d 647, 652, 406 N.E.2d 70, 75, indicating that an injured party should be entitled to full recovery from another for all loss resulting from the breach of a duty owed by that person to the injured party. Plaintiffs point out that this philosophy is applied to awards of prejudgment interest in cases in chancery without need of any statutory authority for the award. *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 86-89, 535 N.E.2d 876, 887-89.

However, that rule has not been followed in cases at law. In *Geohegan v. Union Elevated R.R. Co.* (1915), 266 Ill. 482, 107 N.E. 786, a case concerning condemnation of real estate by a public utility with power to condemn, the court held that a landowner was not entitled to an instruction requiring award of prejudgment interest. The court held that prejudgment interest could not be awarded at common law and could be awarded only if statutory authority existed for the award. The court concluded that the condemning authority was not guilty of "vexatious delay" or any other type of conduct which would entitle the landowner to prejudgment interest under "[s]ection 2 of our statute on interest." *Geohegan*, 266 Ill. at 492, 107 N.E. at 791.

Speaking in the context of whether prejudgment interest can be obtained in suits at law against a governmental unit, the supreme court stated in *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 576, 577, 413 N.E.2d 394, 396, 397, that prejudgment interest is not

recoverable absent a statute or agreement unless money has been wrongfully taken and held without a right or claim which is justified. See also *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415, 423, 167 N.E.2d 236, 240-41.

At all times pertinent, the only statutory provision which contained any general provision for prejudgment interest was section 2 of the Interest Act (Act) (Ill. Rev. Stat. 1991, ch. 17, par. 6402), which, somewhat like the legislation referred to in *Geohegan*, stated:

> "Creditors shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance[;] on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."

In *Richman v. Chicago Bears Football Club, Inc.* (1984), 127 Ill. App. 3d 75, 468 N.E.2d 487, persons who owned a professional football team's season tickets were eventually granted a refund for home games not held that season because of a labor dispute. Those ticket holders sued for interest covering the period of time from the date the games were not held until payment was made. The circuit court granted summary judgment, and the appellate court affirmed. The appellate court pointed out that prejudgment interest principles were involved. The court recognized the rule that, at law, such interest cannot be recovered absent agreement of the parties or a statute. The court found the conduct of the football club did not come within statutory grounds or those which would permit recovery in equity. The time within which payment was withheld was determined not to be unreasonable.

In *Alguire v. Walker* (1987), 154 Ill. App. 3d 438, 447-48, 506 N.E.2d 1334, 1341-42, the court recognized that prejudgment interest was not awardable absent statutory or equitable grounds when not agreed upon. The court held that the damages were not sufficiently liquidated to come within the provisions of section 2 of the Interest Act, nor were they the result of circumstances which would have permitted damages to be allowed in equity. The suit involved was for specific performance with an additional request for damages. In *Steward v. Yoder* (1980), 86 Ill. App. 3d 223, 225, 408 N.E.2d 55, 57, this court recognized that prejudgment interest was allowable in a case at law only under section 2 of the Interest Act and that the money due plain-

tiffs there was not being held in an unreasonable or vexatious manner within the meaning of section 2 of the Interest Act as charged.

In *Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 336, 481 N.E.2d 957, 962, the court reversed an award of prejudgment interest in a medical malpractice action, stating that it was "clear that Illinois statutes do not authorize prejudgment interest in tort cases." That opinion cited *Gardner v. Geraghty* (1981), 98 Ill. App. 3d 10, 14, 423 N.E.2d 1321, 1324, a wrongful death case where the court made a similar statement in approving a refusal of the circuit court to permit award of prejudgment interest to be considered. In *Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64, 73, 540 N.E.2d 770, 776, a suit for damages for personal injuries and wrongful death caused by negligence, and in *Matich v. Gerdes* (1990), 193 Ill. App. 3d 859, 873, 550 N.E.2d 622, 631, a suit for damages for negligent burning of a barn, the appellate court, without citation of authority, held that award of prejudgment interest would not have been proper.

Plaintiffs maintain that the foregoing cases construe the grounds for award of prejudgment interest in cases at law too narrowly. They rely upon *Forrester v. State Bank* (1977), 52 Ill. App. 3d 34, 363 N.E.2d 904. There, the plaintiff sued a bank in fraud and deceit in regard to information which was given by the bank about a cattle-feeding operation. The appellate court upheld an award of interest under section 2 of the Interest Act at the rate set forth therein running from the time of a purchase in the cattle-feeding operation until judgment. The court concluded that section 2 of the Interest Act provided for award of prejudgment interest in actions for fraud. *Forrester*, 52 Ill. App. 3d at 42, 363 N.E.2d at 909.

The *Forrester* court had relied upon *Pfeffer v. Farmers State Bank* (1931), 263 Ill. App. 360, where judgment for fraud had been obtained against a bank when agents of a bank had told a borrower that a fire insurance policy on a building was in force when this was known to be false. The building burned, and the borrower was permitted to obtain prejudgment interest under section 2 of the Interest Act. *Pfeffer* in turn relied upon *Schwitters v. Springer* (1908), 236 Ill. 271, 86 N.E. 102, and *Laughlin v. Hopkinson* (1920), 292 Ill. 80, 126 N.E. 591. In *Schwitters* the plaintiff had been given worthless notes by one to whom he sold land. In a suit for conversion, the court held that the plaintiff was entitled to prejudgment interest under section 2 of the Interest Act. In *Laughlin*, the court held that the trial court erred in submitting an instruction permitting prejudgment interest in a tort suit for fraud and deceit when the underlying damages were not easily ascertainable.

Plaintiffs also rely upon approval of prejudgment interest by Federal courts or those of another State. In *Sanders v. John Nuveen & Co.* (7th Cir. 1975), 524 F.2d 1064, 1075, vacated and remanded on other grounds (1976), 425 U.S. 929, 48 L. Ed. 2d 172, 96 S. Ct. 1659, an underwriter of commercial paper who negligently, but in good faith, misrepresented the financial condition of the issuer was held to be subject to prejudgment interest. However, that case was brought pursuant to Federal securities law and did not involve Illinois law as to damages. The cases of *Auric v. Continental Casualty Co.* (1983), 111 Wis. 2d 507, 331 N.W.2d 325, and *French v. Gabriel* (1990), 57 Wash. App. 217, 788 P.2d 569, *aff'd* (1991), 116 Wash. 2d 584, 806 P.2d 1234, concerned the law of those jurisdictions and not that of Illinois.

Prejudgment interest is not allowed in cases at law unless the damages are liquidated or subject to being easily ascertained (*Kaiser Agricultural Chemicals v. Rice* (1985), 138 Ill. App. 3d 706, 712, 486 N.E.2d 417, 422), but no case at law has been called to our attention where prejudgment interest has been permitted merely because of ease of computation of the underlying damages. The parties dispute whether the damages here were easily ascertainable, but we need not answer that question.

Plaintiffs maintain that their case is covered by the provisions of section 2 of the Interest Act, which permits prejudgment interest "on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance" (Ill. Rev. Stat. 1991, ch. 17, par. 6402). Plaintiffs assert that the agreement that the excess taxes were in the sum of $300,000 constituted such a settlement. If that were so, prejudgment interest could be allowed from the date of that agreement until the sum was paid or merged into a judgment. However, that agreement did not settle accounts between the parties because other claims of damages arising from the negligence of Cherry were left pending.

Plaintiffs also maintain that the cases of *In re Estate of Whitaker* (1989), 182 Ill. App. 3d 420, 538 N.E.2d 174, and *Rebaque v. Forsythe Racing, Inc.* (1985), 134 Ill. App. 3d 778, 480 N.E.2d 1338, where section 2 of the Interest Act was held to authorize prejudgment interest, are analogous to the situation here. We disagree. In *Whitaker*, a bank acting as executor improperly required beneficiaries to advance money to cover estate taxes when such sums were not necessary. The appellate court upheld an award of prejudgment interest upon the amount one beneficiary was entitled to be reimbursed by the bank. The court apparently concluded that the money involved had been

"advanced" to the bank within the meaning of section 2 of the Act. (*Whitaker*, 182 Ill. App. 3d at 424, 538 N.E.2d at 177.) In *Rebaque*, a defendant had refused to pay $36,000, a balance due upon purchase of a high-priced racing car. That defendant was found to have no defense to his obligation to make that payment. The court apparently deemed the "settlement of accounts" provision of section 2 of the Interest Act applied. (*Rebaque*, 134 Ill. App. 3d at 784, 480 N.E.2d at 1342.) As we have stated, the instant obligation of Cherry does not fit within the terms of section 2 of the Interest Act.

Clearly, Illinois does not presently permit the award of prejudgment interest in suits for recovery for negligence. A decade ago, the journal published by the Illinois State Bar Association contained a symposium on the question of whether legislation should be enacted to permit award of prejudgment interest in cases not coming within section 2 of the Interest Act or the equitable theory of awarding such damages. Both the pro and the con articles agreed that the then existing precedent did not permit it. (Londrigan, *Prejudgment Interest, The Case For*, 72 Ill. B.J. 62 (1983); Smith, *Prejudgment Interest, The Case Against*, 72 Ill. B.J. 63 (1983).) No legislation changing that rule has yet been passed.

We recognize that an injured party who is eventually compensated for the amount of the loss nevertheless suffers detriment from the lack of use of the money eventually paid as compensation because of the inability to use the money from the day of loss until the day compensation is paid. However, the law is clear that no prejudgment interest is to be awarded in the case before us. The court properly refused to award it.

■■ Plaintiffs' contention that the court erred in striking certain of its affidavits is important because those affidavits are necessary for plaintiffs to have any foundation for two of their claims of error. One affidavit was made by Deanne Cannell, a certified public accountant, in regard to the sums paid out by the executor in each of the estates. The other was made by Warren Wilson, the son of the executor, who testified as to the circumstances of the two estates at the time a decision was made to sell the farmland involved in order to pay off a bank loan which had been incurred in order to pay death taxes.

During oral argument prior to the entry of the order on July 18, 1990, discussion had occurred concerning plaintiffs' theory that the estates should be reimbursed for losses resulting from a sale of real estate forced because of the higher taxes which resulted from Cherry's error. The judge indicated he was uninformed as to the amounts of money which were involved. Plaintiffs' counsel offered to obtain

and submit those figures to the defense and to the court, and the judge responded "[w]e may want you to do that. We will see where we are going." Later, the judge indicated he had a problem with those issues and stated that, if the parties wished "to submit additional matters in connection with" the issues of fees and forced sales of real estate, they could do so.

Finally, at the end of the arguments, the judge stated:

"I will give you thirty days to submit any information or briefs, whatever you want, on those points. Attorney, consultant fees, loss on forced sale of real estate. Anything additional. Or if you want to just call attention to anything that's already here that you think I may have overlooked or I'm not interpreting correctly, you might say, if you look at page such and such or so and so deposition, such and such and this is all set out, that's fine."

In a docket entry order entered following the hearing held on July 18, 1990, the court stated:

"Statements and arguments of counsel made. Court makes certain findings. Court indicates that the issues concerning attorney fees and costs and Plaintiffs' request for loss on forced sale of real estate are taken under advisement. Leave granted to parties to submit further brief[s], arguments or authorities on said issues not later than August 20, 1990. Court advises parties that Plaintiffs' Request for Lost Investment Value, also referred to as prejudgment interest, will be denied. Written order to be entered by the Court upon determination of all issues by the Court."

Plaintiffs received a copy of that order on July 26, 1990.

On August 20, 1990, plaintiffs filed the affidavits of Cannell and Warren Wilson, and Cherry filed a motion to strike maintaining that the affidavits were outside the court's order. Plaintiffs' attorney wrote to the circuit judge on August 31, 1990, stating that the affidavits were in response to the court's request. Nearly two years later, on June 11, 1992, in its final order, the court allowed the motion to strike the affidavits. The parties cite various rules for determining the court's intent in its order. We need not consider them. The record is ambiguous as to what the court intended.

The court could properly have refused to receive further affidavits at the time of the hearing on the merits of the case on July 18, 1990. A party should have its evidence ready to present at the time set for a hearing on the merits. Thus, plaintiffs are not prejudiced when later the court decides it did not intend to allow further evidence to be in-

troduced. No ambiguity in the order caused plaintiffs to refrain from seeking to present additional evidence during a period of time in which they had a right to do so. Under the unusual procedures followed here, we need not decide whether any error resulted from the court's striking of the affidavit because, in any event, such error did not constitute reversible error.

As we have indicated, the background for plaintiffs' theory of entitlement to damages for expenses of a forced sale of the realty is set forth in the Cannell and Warren Wilson affidavits. They indicated that after the executor had opted to pay Federal estate taxes by installment, the net earnings from the farmland were not sufficient to cover the payments and borrowings were made from a bank. Apparently, sums were eventually borrowed from the bank to make all of the death tax payments. According to plaintiffs, the amount owed the bank then became too large to be serviced from net income from the land, and a sale of the land was thus forced. However, as the evidence necessary to support this claim was not properly before the court when it decided the claim, the court properly rejected the claim.

Moreover, we notice that the principal amount of recovery plaintiffs sought was $92,190, as being the amount of loss on sales price which the estates received because of being forced to sell. This was based upon an affidavit that farmland in the area had, in general, depreciated in value by 21% between the death of Louella G. Adams and the date of sale. The valuation of the land at the time of Louella's death was then reduced by 21%, which created a reduction of $92,190. This figure was meaningless in making a determination as to the loss because of being required to sell. This calculation assumes that the land would have been sold at the time of Louella G. Adams' death had Cherry not erred. That assumption had no basis. The depreciation in the value of the land would have taken place regardless.

Another large portion of the claim for damages resulting from the forced sale was for the lost interest on the $92,190, which a witness put at the sum of $68,358.51. Thus the major portion of the claim for damages arising by the forced sale would have failed even if the Cannell and Warren Wilson affidavits had been considered.

■ Plaintiffs' next contention is that they were entitled to be reimbursed for interest which they were required to pay to the Federal government on the excess taxes resulting from Cherry's negligence. This claim also fails because of the manner in which the case was presented. Although some discussion of the matter occurred during the hearing on July 18, 1990, the claim for this relief was never pleaded by plaintiffs. The circuit court held it was waived, and we find the

court did not abuse its discretion in doing so. Moreover, plaintiffs depended upon the affidavits of Cannell and Warren Wilson to prove the amount of interest they would have been required to pay.

Plaintiffs request that we treat the pleadings to be amended to conform to the proof pursuant to Supreme Court Rule 362(b) (134 Ill. 2d R. 362(b)). (See *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 388 N.E.2d 943.) As we have upheld the court's striking of the affidavits of Cannell and Wilson, the proof is not present to support such an amendment. We deny plaintiffs' request.

■ Finally, plaintiffs assert that a portion of the fees which had been paid to Cherry should be refunded. The court did award the estates $14,939 as reimbursement for fees paid by the estates to two attorneys and an appraiser whose services had been required to do tax work which resulted from Cherry's negligence. The court refused reimbursement by Cherry, because no figures were presented to show which portion of the fees he received was for work properly performed and which covered that which was negligent. We find no error in this ruling.

For the reasons stated, we affirm.

Affirmed.

STEIGMANN, P.J., and KNECHT, J., concur.