**CARLISLE CORPORATION,**
Carlisle Syntec Systems
Division, Plaintiff,

v.

**URESCO CONSTRUCTION
MATERIALS, INC.,**
Defendant.

Civ. A. No. 1:CV–92–1073.

United States District Court,
M.D. Pennsylvania.

June 10, 1993.

Delano M. Lantz, Harrisburg, PA, Jay Williams, Roger Pascal, Deborah A. Golden, Schiff, Hardin & Waite, Chicago, IL, for plaintiff.

Allen C. Warshaw, Duane, Morris & Heckscher, Harrisburg, PA, for defendant.

## MEMORANDUM

CALDWELL, District Judge.

Pending is the motion for summary judgment of plaintiff Carlisle Corporation ("Carlisle"). We exercise jurisdiction pursuant to 28 U.S.C. § 1332(a).

## I. Facts and Procedural History

Carlisle is a manufacturer of, *inter alia*, roofing materials incorporated in Delaware and principally located in Carlisle, Pennsylvania. Uresco Construction Materials, Inc. ("Uresco"), is a Washington corporation principally located in Kent, Washington. In July, 1985, the parties entered into a contract calling for Uresco to serve as distributor or manufacturer's representative for Carlisle's products in Washington, Oregon, and Alaska. In 1992, Carlisle terminated the agreement and threatened to sue Uresco for payment of a number of outstanding invoices. Uresco immediately filed suit in the United States District Court for the Eastern District of Washington asserting that Carlisle had breached the distributorship agreement. Two weeks later, Carlisle filed suit in this court seeking payment of the allegedly unpaid invoices. Carlisle filed a motion before the Washington court for transfer of the action pending there to the Middle District of Pennsylvania and the motion was granted on October 2, 1992. Carlisle filed a motion for summary judgment and a supporting brief on April 22, 1993. The motion is now ripe for disposition.[1]

## II. Law and Discussion

### A. Summary Judgment Standard

■ Summary judgment is appropriate when there remain no genuine issues as to any material facts and judgment may be entered as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a movant submits that there is no genuine issue as to a material fact, its opponent must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd., et al v. Zenith Radio Corp., et al,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. Distributorship Agreement

In our recitation of the facts of this case, we referred to the initial agreement between Carlisle and Uresco as a distributorship agreement. In its opposition to the current motion, defendant challenges that designation.

> ... it is clear that Carlisle did not intend that Uresco be a dealer or distributor, and that the "distributorship" cases Carlisle cites do not control here.

Defendant's Brief at 10. This assertion is at odds with the characterization defendant offered in its amended complaint filed January 12, 1993 (before the cases were consolidated).

> 7. Plaintiff Uresco and defendant Carlisle, through its Syntec Systems Division, entered an agreement in 1985 wherein Uresco was to act as a representative of and distributor of defendant's roofing products in Alaska, Oregon, and Washington. Uresco thereafter expended substantial money and effort to create a distribution network in those states ...

Additionally, in his declaration of October 9, 1992, Uresco's president characterized the relationship in describing Uresco's contacts with Pennsylvania:

> Uresco's only contact with Pennsylvania once *it began to act as a distributor of Carlisle's products* were four or five telephone calls a year to Pennsylvania ...

Declaration of Chad T. Moore at ¶ 5 (Oct. 9, 1992) (emphasis added). Uresco's current argument that the agreement was something other than a distributorship agreement is of

---

1. In our order of May 7, 1993, we consolidated the two pending actions into one, designating Carlisle the plaintiff and Uresco the defendant and counterclaimant. Prior to filing its brief in opposition to the current motion, defendant requested an enlargement of time, explaining that it required time to research the laws of several states. Before we could resolve the extension of time question, defendant filed a response—seemingly mooting its own motion. Now, in its brief in opposition to the current motion, defendant states

> Uresco has asked in connection with its Motion for Enlargement of Time that the required investigation and analysis be conducted before it must respond to Carlisle's Summary Judgment Motion. Uresco now renews that request.

We do not know what is sought in this confusing request.

recent vintage.[2] Ultimately, the issue is of little consequence. Whatever label is appended to the contract, its terms describe an arrangement analogous to a distributorship agreement and defendant has drawn no substantive distinction.

### C. Right to Price

Plaintiff argues that it is entitled to judgment because Uresco ordered roofing materials, accepted them when tendered, and has yet to pay for them. Uresco does not dispute that the materials were ordered and delivered and that it has not yet paid for them.[3]

As a threshold matter, we note that the Uniform Commercial Code ("UCC" or "Code") applies to this transaction in goods. UCC §§ 2–102, 2–105. Under § 2–709, a seller may institute an action for the price of goods accepted by a buyer.

**Action for the Price.**

(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

> (a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; ...[4]

In the instant case, there is no question that the goods were accepted and that the buyer (Uresco) has failed to pay the price as it became due.

The point of contention revolves around Uresco's claim that plaintiff breached the representation agreement and that the breach resulted in damages to Uresco. Uresco contends that its damages should be set off against the amount it owes Carlisle.

### D. Right to Set–Off

■ Defendant argues that its right to set off derives from either UCC § 2–717 or the common law. We will consider these possibilities in turn.

UCC § 2–717 is as follows:

**Deduction of Damages From the Price.**

The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due *under the same contract.*

(emphasis added). Defendant relies on this provision to argue that it need not pay the price due for the roofing material because it can be set-off against the damages Uresco incurred as a result of Carlisle's breach of the 1985 agreement.

The parties focus on the question of whether the 146 invoices in question are, in fact, part of the same contract as the distributorship agreement. Plaintiff contends that there are separate contracts: the distributorship agreement that established a relationship between the parties and the various purchase orders and invoices by which Carlisle agreed to provide goods to Uresco. Defendant argues that the distributorship agreement and the invoices are parts of one contract and, barring that conclusion, that

---

**2.** There is evidence in the record that indicates that Carlisle considered the agreement to be a distributorship agreement.

> Below listed are the counties in the state of Idaho to be added to the territory described in your distributor agreement dated January 26, 1985.

Letter from John Kavanagh, of Carlisle, to Doug Sobek, of Uresco, 2/14/90.

**3.** *See* Defendant's Counterstatement of Undisputed Material Facts at ¶ 8: "Uresco rightfully has refused to pay Carlisle because it is entitled to a set-off against amounts owed to Uresco by Carlisle for breach of the 1985 manufacturer's representative Agreement."

**4.** The phrasing here quoted is from the official text of the UCC promulgated by the Permanent Editorial Board. Because there is a dispute regarding choice of laws, we will not quote directly from any state's codification of the relevant sections, but will note that they are substantively the same in each state whose law might govern the various transactions in this case. *See*, Mo.Rev. Stat. § 400.2–709 (1991) (substantively the same as official § 2–709); Mo.Rev.Stat. § 400.2–717 (1991) (tracks verbatim official § 2–717); Or. Rev.Stat. § 72.7090 (1991) (substantively the same as official § 2–709); Or.Rev.Stat. § 72.-7170 (1991) (substantively tracks official § 2–717); 13 Pa.Cons.Stat.Ann. § 2709 (Purdon 1992) (substantively the same as official § 2–709); 13 Pa.Cons.Stat.Ann. § 2717 (tracks verbatim official § 2–717); Wash.Rev.Code § 62A.2–709 (1991) (substantively the same as official § 2–709); Wash.Rev.Code § 62A.2–717 (1991) (tracks verbatim official § 2–717).

the determination of whether there are separate contracts is a question of fact, rendering summary judgment inappropriate.

■ At the outset of our analysis, we note that the question of whether there was more than one contract is one of law, not of fact. *See Hellendall Distributors, Inc. v. S.B. Thomas, Inc.*, 559 F.Supp. 573, 574 (E.D.Pa. 1983); *see also, Travenol Laboratories, Inc. v. Zotal, Ltd.*, 394 Mass. 95, 97–98; 474 N.E.2d 1070, 1073 (1985).

The 1985 distributorship agreement does not provide for the specific shipment of or payment for roofing materials. Rather, it broadly sets forth payment terms and the right of termination.

This agreement will remain in effect until terminated by either party, with or without cause, on sixty days written notice.

The specific prices and quantities were set forth either in purchase orders Uresco sent to Carlisle or in invoices sent by Carlisle to Uresco (the record is unclear). *See* Affidavit of Carlisle Credit Manager Robert King at ¶ 3.

Section 2–717 of the Uniform Commercial Code allows set-off in cases involving "the same contract." The official comments to the Code offer some assistance in interpreting what constitutes the same contract.

To bring this provision into application the breach involved must be of the same contract under which the price in question is claimed to have been earned.

U.C.C. § 2–717, comment 1. In the instant case, the 1985 distributorship agreement created no right to payment; rather, it created a potential for future sales. Those sales materialized when Uresco ordered products from Carlisle. Each purchase order/invoice, then, created a right to payment.

Under the facts in this case, we must conclude that there were separate contracts. There is persuasive authority to the same effect. In *Hellendall*, a distributor of bakery products sued a manufacturer for wrongful termination of a distribution agreement. 559 F.Supp. at 574. The manufacturer counter-

claimed for sums owing from sales under the distributorship agreement and moved for summary judgment on that claim. The distributor argued that summary judgment was inappropriate as it had a right to set-off under § 2–717. The court disagreed.

Uniform Commercial Code § 2–717 does not provide a right to set off the amount owed under §§ 2–606 and 2–607 [the acceptance of goods] because the obligation to pay for goods tendered and accepted does not arise under the "same contract" as the alleged breach of an exclusive dealing or distributorship arrangement by the defendant.

559 F.Supp. at 574–75. Similarly, in *Travenol*, the Massachusetts Supreme Judicial Court examined a suit between a manufacturer of medical products and its Israeli distributor. 394 Mass. at 95; 474 N.E.2d at 1072. The manufacturer terminated the distributorship agreement and sued for the price of goods sold and delivered. The distributor defended that it had a right to set off for breach of the distributorship agreement.

Moreover, it is well established that the buyer's "obligation to pay for good tendered and accepted does not arise under the 'same contract' as the alleged breach of the distributorship arrangement" by the seller.

394 Mass. at 95; 474 N.E.2d at 1073; *citing Hellendall, supra*, and *C.R. Bard, Inc. v. Medical Electronics, Corp.*, 529 F.Supp. 1382, 1387 (D.Mass.1982); *see also, Rebaque v. Forsythe Racing, Inc.*, 134 Ill.App.3d 778, 781, 89 Ill.Dec. 595, 597–98, 480 N.E.2d 1338, 1340–41 (1985).[5] The district court, in *Bard*, further declared that

[m]oreover, we believe that in order for a buyer to invoke § 2–717, the asserted breach must go to the essence of the transaction under which the seller seeks to recover his price. Here the breaches asserted by the buyer largely relate to the termination of the distributorship agreement; there is no hint that seller acted improper-

---

**5.** In both *Travenol* and *Bard*, the courts referred to the Massachusetts codification of § 2–717. *See* Mass Gen.L. ch. 106, § 2–717 (1992). As

with the other states described, *supra*, at note 4, Massachusetts adheres to the official version without modification.

ly in any way regarding the actual sale or delivery of the goods. A buyer should not be able, by asserting a remote breach of contract, to delay payment for goods accepted.

529 F.Supp. at 1387. The same point applies to the case at bar and we are likewise convinced that the set-off argument serves only to delay that which is inevitable.

Under UCC § 2–717, defendant is not entitled to set-off any damages it may have incurred.

■ Defendant also argues that it might have a common law right to set-off. The Uniform Commercial Code provides that

Unless displaced by the particular provisions of the Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

UCC § 1–103. This section indicates that common law principles, to the extent that they are not specifically displaced by the Code, remain applicable. The converse, then, is that the common law is displaced by specific provisions in the UCC.

To put this another way, Code sections "occupy the legal field" except insofar as they do not "particularly" displace pre-existing legal principles.

James J. White & Robert S. Summers, Uniform Commercial Code § 5 (3d ed. 1988). In the instant case, defendant seeks a set-off. The Code specifically provides for set-offs in particular circumstances. UCC § 2–717.[6] Because of that, we must conclude that the Code drafters, and the state legislatures that have adopted the Code, meant to displace common law set-off. *See Microsize, Inc. v.*

*Arkansas Microfilm, Inc.,* 29 Ark.App. 49, 55; 780 S.W.2d 574, 578 (1989).

Defendant offers several cases to the contrary. Those cases, however, are either pre-Code, *see, e.g., In re Monongahela Rye Liquors,* 141 F.2d 864 (3d Cir.1944), or do not involve transactions in goods, *see, e.g., M.N.C. Corp. v. Mount Lebanon Medical Center, Inc.,* 510 Pa. 490, 509 A.2d 1256 (1986). Of note is the decision of the Court of Common Pleas of Allegheny County in *In re Estate of Caplan,* 117 Pitt.L.J. 192 (1969). Defendant offers *Caplan* for the proposition that the "Pennsylvania UCC preserves the right of set-off existing prior to its adoption in Pennsylvania." Indeed, the court held that "[f]urthermore, the Code did not interfere with the right of set-off." 117 Pitt.L.J. at 197–198. However, *Caplan* did not implicate the right of set-off found in article 2 of the UCC; it involved a commercial paper issue under article 3. Article 3 has no corresponding set-off provision, and so the common law in that area is not displaced. That is not true in the instant case.[7]

In sum, we conclude that the distributorship agreement and the various invoices do not form one contract, that therefore there is no right to set-off under UCC § 2–717, and that the Code displaced common law set-off. We will grant the motion for summary judgment.

### E. Right to Final Judgment

■ Finally, defendant argues that, even if summary judgment is appropriate, we should delay entry of final judgment until resolution of defendant's counterclaim. Plaintiff counters that there is no reason to delay its ability to execute its judgment.

The question is governed by Fed.R.Civ.P. 54(b).

---

**6.** There is no real dispute that the Code applies to the current issue. The Code is implicated by transactions in the sale of goods. UCC §§ 2–102, 2–105. Plaintiff's lawsuit seeks payment for goods tendered and accepted.

**7.** Additionally, *Caplan* relies on *Middle Atlantic Credit Corp. v. First Pennsylvania Banking & Trust Co.,* 199 Pa.Super. 456, 460; 185 A.2d 818, 820 (1962). In *Middle Atlantic,* the Superior

Court underscored that the Code provisions on commercial paper do not provide for set-off. With respect to *Caplan,* we note as well that, even if it stood for the proposition for which it is offered, the opinions of Pennsylvania's Courts of Common Pleas are not binding on this court. *See, Wiley v. State Farm Fire & Casualty Co.,* No. 92–3137, 1993 WL 186774 (3d Cir. June 3, 1993).

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Courts have struggled with the appropriate standard to employ in considering whether to direct final judgment under Rule 54(b). Defendant points us to *Allis–Chalmers Corp. v. Philadelphia Elec. Co.,* 521 F.2d 360, 363 (3d Cir.1975) in which the court held that Rule 54(b) orders should only be used in "the infrequent harsh case." 521 F.2d at 363, *quoting* 6 Moore, Federal Practice, 264–65 (1953). However, the U.S. Supreme Court has criticized the "harsh" standard. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 9, 100 S.Ct. 1460, 1465, 64 L.Ed.2d. 1 (1980). The Third Circuit subsequently retreated. *Cemar, Inc. v. Nissan Motor Corp.,* 897 F.2d 120, 122 (3d Cir.1990). In the end, we are left to consider, among other things,

> whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

*Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465. Relying on the discredited *Allis–Chalmers* standard, defendant argues that plaintiff has failed to meet its burden. We disagree. The claim and counterclaim are, as we have noted, related to separate contracts. Should the resolutions of each claim be appealed, there is no chance the Court of Appeals would be required to visit the same issue twice.

We are not alone in so deciding. In granting a similar request, the U.S. District Court for the District of Massachusetts explained in *Bard, supra:*

Plaintiff's claim, as discussed above, is for recovery of an ascertainable sum for goods sold and delivered. That amount is considerable. In such a situation, we see no reason why plaintiff should be denied the use of those funds while awaiting disposition of [defendant's] counterclaim.

529 F.Supp. at 1388; *see also, Schieffelin & Co. v. Valley Liquors, Inc.,* 823 F.2d 1064, 1067 (7th Cir.1987).

In *"21" Brands, Inc. v. R & J Emmet PLC,* No. 88 Civ. 8392 (JSM), 1990 WL 180136, 1990 U.S.Dist. LEXIS 15328 (S.D.N.Y. Nov. 13, 1990), the court examined a situation similar to that in the instant case.

> In the case at bar, Emmet's counterclaim for $865,000 is not "inextricably interwoven" with the underlying cause of action. Here, the quality of the goods sold and delivered are not in dispute and "21" Brands' claim for damages do not relate in any way to the goods delivered between October 4 and October 28. Given Emmet's clear entitlement for payment for goods that it delivered to "21" Brands, it would be inequitable to permit "21" Brands to withhold payment of the amount due for these goods during the period of time necessary to resolve the factual dispute surrounding Emmet's right to terminate the distribution agreement.

*Id.* 1990 WL 180136 at *4, 1990 U.S.Dist. LEXIS 15328 at *11. We agree with that conclusion. We will, therefore, enter final judgment in favor of plaintiff.

Plaintiff indicates, and defendant does not contest, that interest on the balance due is payable at an annual rate of 15 per cent. The judgment will, therefore, include interest at that rate for the period ending with the filing of this Memorandum and Order. The award shall earn interest at the legal rate until paid.

An appropriate order will issue.

## ORDER AND JUDGMENT

AND NOW, this 10th day of June, 1993, upon consideration of the motion for summary judgment of plaintiff, Carlisle Corporation, it is ordered that:

1. The motion is granted.

2. Summary judgment is entered in favor of plaintiff and against defendant in the amount of $381,625.71, with interest from date hereof.